Clarence McCLENDON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 78–1027.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1978.

Decided Nov. 13, 1978.

Rehearing and Rehearing En Banc Denied Dec. 5, 1978.

---

H. Vann Smith, Smith & Jernigan, Little Rock, Ark., argued and Robert D. Smith, III, Smith & Jernigan, Little Rock, Ark., on brief and reply brief, for appellant.

Don N. Curdie, Asst. U. S. Atty., Little Rock, Ark., argued, and W. H. Dillahunty, U. S. Atty., Little Rock, Ark., on brief, for appellee.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

Defendant-appellant, Clarence McClendon, was convicted by a jury of distribution of heroin in violation of 21 U.S.C. § 841(a) on September 30, 1977. There is no substantial controversy over the facts. The government's case, based on the eyewitness testimony of two paid informers and one government agent, was that the defendant had distributed heroin on June 7, 1977. The

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

defense presented was an alibi, with eye-witness testimony and circumstantial evidence to account for all of defendant's actions on that day.

The defendant's allegations of error all deal with the conduct of the trial and evidentiary questions presented. We find that none of these grounds has sufficient merit to require a reversal of defendant's conviction.

■ Defendant argues vigorously that there was error in that during the trial the prosecution was allowed to introduce evidence of other conversations between the defendant and the government witnesses concerning the sale of drugs, which conversations took place on June 6, 1977 and June 8, 1977. The argument made is that such evidence of other crimes should not have been admitted. There was no error in such admission upon the facts before us. Here the defense was based upon alibi and hence identification of the defendant by the government witnesses was necessarily at issue.[1] Evidence of repeated meetings between the defendant and the government witnesses is substantially probative in that it indicates a greater likelihood of accurate identification. Moreover, the potential for prejudice alleged by the defendant is too speculative to outweigh the probative value of the evidence and hence exclusion under Fed.R.Evid. 403[2] is not required.

Defendant complains also of the composition of the jury. As defendant states in his brief, "[t]he Defendant does not question the validity of the selection process in choosing the jury panel, but does attack the method and avenue the Court took in arriving at the courtroom pool." The procedure customarily employed is described by the court as the calling of a courtroom pool of 33 to 35 names at random from the full jury panel of 72 names previously selected, the jury ultimately being chosen from this pool.

In this case a previous trial had been held of one Larry Burks, also charged with the distribution of heroin, resulting in his conviction. It appeared that the government intended to call the same witnesses for the defendant's trial as it had utilized in the Burks trial. Defendant thereupon filed a Motion to Quash the Jury Panel on the ground, as stated by defendant in his brief, that "[t]he intent of the Motion was to get a new jury panel because certain members of the panel could be prejudiced against the defendant after serving on a prior case very similar in nature to the present case." In the prior trial, it was asserted, the jury had passed upon the credibility of the witnesses to be relied upon in the defendant's trial. The government's position on this matter was stated to the court in the following terms:

> As far as the jury panel, a couple of days ago we cut out the *Burks* jurors so as not to prejudice the defendant's case by having jurors on the panel who might have seen the government's witnesses and, therefore, be biased against the defendant because of the fact that they heard the voir dire, saw the witnesses of the government, talked to each other about the verdict of the case, or sat on the jury and were out ten minutes before they came back and found him guilty.

After argument the court granted the defendant's motion in part. The judge later stated, with respect thereto, "I have deleted those jurors that were in the courtroom in the one trial that has occurred, on using the same witnesses that—if you want to call it—a related case. Of course, the buy today is a different date. But the same witnesses, I presume, will be used

---

1. Fed.R.Evid. 404(b) provides as follows:

   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *identity,* or absence of mistake or accident. (Emphasis added.)

2. Fed.R.Evid. 403 provides as follows:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

today." Accordingly the 35 who were called to the Burks trial were not called to the defendant's trial, leaving remaining, from the 72 on the panel, 37 jurors. The clerk called at random 33 names (the usual number called for any trial) from this number to appear for the defendant's trial and from this number 12 jurors were chosen.

The argument made to us as to the procedure that was employed asserts that defendant was not accorded

the right to have his jury drawn from seventy-two people that were randomly selected throughout the District, because thirty-five of those were selectively excluded from his jury panel. The random selection of his jury ceased at a point prior to the actual selection of his jury. He, therefore, tried his case under a different set of rules from other criminal defendants in the Eastern District of Arkansas.

■ We here rule only upon the defendant's claim of error, namely that the jury selected to hear his case was not selected at random as required by 28 U.S.C. § 1861 et seq.[3] The objection is without merit. A basic requirement is that "the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."[4] In this context, where the complaint concerns the method of selection of a courtroom pool from an admittedly valid jury panel, the essence of randomness is the absence of any arbitrary attempt to exclude a class of persons from the jury.[5] Here there was obviously no exclusion of any class within the community nor is there even an allegation that the jurors who appeared for trial, or who took part therein, were in any way prejudiced. There was no prejudicial error in the procedure employed.

The defendant complains of the failure of the government to disclose the names of its witnesses, "especially in light of the fact that the defendant is required to give the names and addresses of its alibi witnesses." The statutory grounds for this allegation of error, whether Rule 16, Fed.R.Crim.P., or Rule 12.1 thereof, are not made clear in either the pleadings or the briefs. The defendant's original motion for disclosure is based on Fed.R.Crim.P. 16, the general discovery provision.[6] On the other hand, the government utilized Fed.R.Crim.P. 12.1[7] to discover the names of the defendant's alibi witnesses. But the defendant's motions brought thereafter[8] to discover the government's witnesses did not specifically rely on Rule 12.1. The district judge's ruling on the Motion to Dismiss was explicitly based on the lack of special circumstances that would justify an order of disclosure under Rule 16. Finally, the defendant's briefs refer only to defendant's original Rule 16 motion.

We are of the opinion that, although upon the record before us Rule 12.1 was not

3. As the issue is presented we need not rule upon either the necessity or the desirability of excluding, on the ground of potential or actual prejudice, jurors who have already heard the same witnesses testify in a related case. See Johnson v. United States, 484 F.2d 309 (8th Cir.), cert. denied, 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973); United States v. Williams, 484 F.2d 176 (8th Cir.), cert. denied, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973); United States v. Stevens, 444 F.2d 630 (6th Cir. 1971).

4. Taylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975).

5. See United States v. Davis, 518 F.2d 81 (10th Cir.), cert. denied, 423 U.S. 997, 96 S.Ct. 425, 46 L.Ed.2d 371 (1975) (citing 28 U.S.C. §§ 1862, 1863(b)); Sitarski v. New York, 358 F.Supp. 817, 819–20 (W.D.N.Y.1973).

6. The denial of this motion is within the discretion of the district judge. United States v. Williams, 578 F.2d 1383 (8th Cir. 1978); United States v. Cole, 449 F.2d 194 (8th Cir. 1971), cert. denied, 405 U.S. 931, 92 S.Ct. 991, 30 L.Ed.2d 806 (1972).

7. Thus, the government's demand for Notice of Alibi was made " * * * pursuant to Rule 12.1 of the Federal Rules of Criminal Procedure * * *."

8. See, e. g., Defendant's Motion for Bill of Particulars and its Motion to Dismiss, both of which relied upon general allegations of unfairness.

briefed or formally presented to the district judge, it was applicable to defendant's request for disclosure of the government's witnesses. As was held in *United States v. Myers,* 550 F.2d 1036, 1041 (5th Cir. 1977):

> Rule 12.1(a) of the Federal Rules of Criminal Procedure requires a defendant to disclose, upon receipt of a written government request, whether he intends to offer an alibi defense, the place where he claims to have been at the time the alleged offense was committed, and the names and addresses of the witnesses upon whom he intends to rely in attempting to establish his alibi. Section (b) of the Rule requires reciprocal disclosure of witnesses unearthed by the government, and section (c) makes the duty to disclose a continuing obligation for both parties. Section (e) authorizes the district court to excuse a party from compliance with the disclosure requirements upon a showing of good cause, and section (d) empowers him to penalize unexcused noncompliance by excluding the testimony of undisclosed witnesses. (Footnote omitted.)

▉ Assuming that there was a duty to disclose the names and addresses of the witnesses upon whom the government "intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses," [9] nevertheless, in view of the testimony adduced at the trial, we find that no material prejudice resulted from nondisclosure, it being well settled that "[a]n error in administering the discovery rules is not reversible unless shown to be prejudicial to the substantial rights of the defendant." *United States v. Krohn,* 558 F.2d 390, 394 (8th Cir.), *cert. denied,* 434 U.S. 868, 98 S.Ct. 207, 54 L.Ed.2d 145 (1977). Here there was no such prejudice shown.

The facts relevant to defendant's motion to compel the government to provide it with the names and addresses of witnesses can be best appraised in light of the other events concerning these same witnesses. The government presented its case principally through the testimony of Mr. George Marshall, and Mr. Willie Jackson, government informers, as well as Mr. Bernard Harry, the government agent who actually made the buy from the defendant. These three witnesses, Harry and Marshall and Jackson, had been involved in an undercover narcotics operation for a number of months, resulting in the indictment of eleven separate defendants. Several of such defendants had already pled guilty and one defendant had had a jury trial (the Burks case, *supra*) a few weeks prior to the trial in this case. As would be expected in view of the operation conducted, the same government witnesses testified at that trial as testified in the trial of the case before us.

It appeared from the first trial that the defense actually knew of the names of the government witnesses at a point in time early enough to avoid any possibility of prejudice resulting from surprise. At that first trial, with defendant's counsel present, the overall background of the narcotics investigation culminating in these arrests was explained, along with a disclosure of the names of the two informers.[10] The defense admits, in its brief in support of a motion to quash the jury panel, that it knew special agent Bernard Harry would testify in the case at issue and was of the opinion that other witnesses used in the previous narcotics trial would also testify. At the oral argument over the defendant's motion to quash the jury panel the prosecutor explicitly told the defendant's counsel that the same government witnesses used in the previous trial would be relied on again in this trial.[11] Finally, in the prosecution's opening statement, the names of the witnesses were stated, along with a summary of their expected testimony.[12]

A number of other factors present in this case have been held to be evidence that a defendant was not prejudiced by the non-

---

9. Rule 12.1(b), Fed.R.Crim.P.

10. T–15.

11. T–9.

12. T–45, 46.

disclosure of witnesses during discovery. Thus, as in *United States v. Roell*, 487 F.2d 395 (8th Cir. 1973) and in *United States v. Woods*, 486 F.2d 172 (8th Cir. 1973), the defendant was able to conduct a thorough cross-examination of each of the government witnesses at the trial. There is no indication that favorable testimony by the witnesses was prevented by the government's nondisclosure, a factor relied on in *United States v. Bailey*, 550 F.2d 1099 (8th Cir. 1977). No request for a continuance based on surprise as to the testimony of the witnesses was made. *See United States v. Krohn*, 558 F.2d 390 (8th Cir.), *cert. denied*, 434 U.S. 868, 98 S.Ct. 207, 54 L.Ed.2d 145 (1977). Finally, the witnesses were in protective custody for their safety, a factor to be considered in the disclosure of their location. *See United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976).

In summary, if in fact the defendant is relying upon Rule 12.1 for the government's obligation to make "reciprocal disclosure of witnesses unearthed by the government," the purpose of the Rule, as was held in *United States v. Myers*, 550 F.2d 1036, 1042 (5th Cir. 1977), was "to prevent prejudicial surprise to the parties and to obviate the need for continuances which arise when one side introduces unexpected testimony at trial." In the case before us it is abundantly clear that the element of surprise was not a substantial or significant factor in the case. The essential elements of the case were well known because of the prior trial and the disclosed relationships between the parties. Noncompliance with Rule 12.1 (assuming a duty to comply) could not have been prejudicial to defendant's case.

Finally, the defendant contends that there is insufficient evidence to support the verdict. This contention is clearly without merit. There was eyewitness testimony on both sides and credibility was the basic issue. The jury was justified in its conclusions.

We have reviewed in detail the remaining assignments of error and find nothing prejudicial therein.

The conviction is affirmed.