# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-3492

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Phillip Eugene Parmley, | * | |
| | * | **[PUBLISHED]** |
| Appellant. | * | |

———————

Submitted: February 7, 1997

Filed: March 17, 1997

———————

Before McMILLIAN, FAGG, and LOKEN, Circuit Judges.

———————

PER CURIAM.

Phillip Eugene Parmley appeals after a jury convicted him of being a felon in possession of a firearm. He contends that the district court[1] erred in refusing to strike the jury panel because eighteen members had participated in the voir dire, but had not served as jurors, at an earlier trial of the same offense which ended in a mistrial for lack of a unanimous verdict. We affirm.

Prior to the second trial, the district court denied Parmley's motion to quash the jury panel. At the start of voir dire, the court advised the prospective jurors that Parmley's previous trial for this offense had ended in a mistrial. The court explained:

_____

[1]The HONORABLE JIMM LARRY HENDREN, United States District Judge for the Western District of Arkansas.

"There was no conviction, there was no acquittal. So in the eyes of the law, it simply did not happen." Noting that some panel members might have participated in the earlier voir dire, the court admonished that the previous trial "has nothing whatever to do with our activities today" and asked whether any prospective juror would be prejudiced for or against Parmley because of the earlier mistrial. No one responded.

Later in the voir dire, one panel member, Camila Norton, advised the court outside the hearing of the others that she had a brief conversation with a juror from the first trial during another phase of their jury service. That juror told Norton that the jury could not reach a decision even though the juror thought Parmley should have been convicted. After Norton gave assurances (i) that she could accept the fact that the prior mistrial "doesn't mean anything one way or the other," and (ii) that she would not be influenced by her conversation with the prior juror, the court denied Parmley's motion to strike Norton for cause. It later denied a motion to strike for cause all panel members who had participated in the earlier voir dire. Six of those panel members served on the second jury, including Norton.[2]

On appeal Parmley argues only that the district court erred in denying his motion to quash the entire jury panel. Conducting voir dire and striking jurors for cause are matters committed to the district court's discretion. "[T]he mere selection of jurors from panels who may have previously participated in voir dire, even in a similar case, is not error, unless actual bias is shown." United States v. Dion, 762 F.2d 674, 693 (8th Cir. 1985), rev'd on other

---

[2]Parmley did not peremptorily strike Norton from the jury and does not separately challenge the district court's decision not to strike Norton for cause.

grounds, 476 U.S. 734 (1986).  When the issue is, as in this case, whether a juror must be excused or stricken as a matter of law because of information acquired during prior jury service, the question becomes whether that information is so prejudicial, or was so improperly obtained, that actual bias must be presumed.

Here, Parmley did not prove actual bias, he argues that bias should be presumed.  He relies primarily on two cases involving jurors who had acquired information from a different but related case.  In Leonard v. United States, 378 U.S. 544 (1964), the separate jury in the second of two consecutive trials heard the first jury announce defendant guilty in open court.  The Supreme Court summarily reversed based upon the government's confession of error on appeal.  In United States v. Patterson, 648 F.2d 625 (9th Cir. 1981), six members of a jury that convicted defendant of drug trafficking charges had been members of a venire panel called for his trial on different drug charges the previous day.

In Leonard and Patterson, the overlapping jurors learned about defendant's prior criminal history as a result of their involvement in the first trial -- a prior conviction in Leonard, and charges of different criminal conduct in Patterson.  In those situations, the jurors acquired prejudicial information without regard to its admissibility in the second trial under the standards of Federal Rules of Evidence 403 and 404(b).  Here, on the other hand, all the overlapping jurors learned from the first voir dire was that Parmley was previously charged *with this same offense*, and the district court advised them at the second voir dire that the first jury had been unable to reach a verdict.  This information was of little inherent significance in the second trial,[3] the district

---

[3]Contrary to the dissent's intimation, the record reflects that prospective juror Norton's brief conversation with a juror

court instructed the jurors to ignore it, and Parmley made no showing that any juror knew more than he or she disclosed during the second voir dire. In these circumstances, bias may not be presumed. Thus, the district court did not abuse its discretion in questioning the jurors for potential bias and, based upon their responses, accepting assurances that their knowledge of the prior mistrial would not affect their ability to give Parmley a fair and impartial second trial. Cf. United States v. Young, 553 F.2d 1132, 1136 (8th Cir.), cert. denied, 431 U.S. 959 (1977).

Parmley instead urges us to mandate the procedure followed in McClendon v. United States, 587 F.2d 384, 386-87 (8th Cir. 1978), cert. denied, 440 U.S. 983 (1979), where the district court granted defendant's motion to strike the entire overlapping panel, not just the panel members who in fact served as jurors in an earlier trial of a codefendant. McClendon may well reflect the more prudent practice, but this remains a question committed to the district court's discretion. Parmley has no evidence that the overlapping jurors brought prior knowledge to his second trial that would inevitably have tainted or augmented their consideration of the evidence properly admitted at that trial.

The judgment of the district court is affirmed. Parmley's pro se motion for leave to raise an additional issue is denied.

McMILLIAN, Circuit Judge, dissenting.

---

from the first trial did not reveal what evidence the first jury heard, only how that juror evaluated the evidence. Learning about evidence at an earlier trial would compromise a juror's ability to consider only the trial evidence. Learning that one juror voted to convict at a trial that produced no unanimous verdict did not tell Norton anything new or prejudicial.

I respectfully dissent.  This is not a typical juror qualification case.  "Rulings on juror qualifications will not be interfered with on appeal absent a clear showing of abuse of the sound discretion that is vested in the District Court.  Unless actual bias is shown the [District] Court's refusal to strike potential jurors will not be deemed a basis for error."  United States v. Young, 553 F.2d 1132, 1136 (8th Cir.), cert. denied, 431 U.S. 959 (1977).  Rather, the present case involves overlapping jury venires; some of the prospective jurors in the present case were members of the venire in the first trial.  See United States v. Patterson, 648 F.2d 625, 629-30 (9th Cir. 1981).  As noted by the majority opinion, "the mere selection of jurors from panels who may have previously participated in voir dire, even in a similar case, is not error, unless actual bias is shown."  United States v. Dion, 762 F.2d 674, 693 (8th Cir. 1985) (citations omitted), rev'd on other grounds, 476 U.S. 734 (1986).

In the present case, however, the prospective jurors did more than participate in voir dire in connection with the first trial.  At least one prospective juror, Camila Norton, discussed the first trial with "Nina," one of the jurors who had served on the jury in the first case.  Some of the other prospective jurors probably overheard their conversation.  Nina told Norton what she thought about the evidence and what she thought the outcome should have been.  The prospective jurors already knew that the first trial had involved the same charges but had ended in a mistrial. These circumstances suggest a significant risk of prejudice, which, in my view, was not negated by either examination or admonition of the prospective jurors.  Except for Norton, examination of the prospective jurors focused on the fact that the first trial ended in a mistrial, not whether they had overheard Nina discuss the evidence and what the outcome should have been or, if they had, whether that information would have had any influence on them.  Of

the 18 "overlapping" prospective jurors, 6, including Norton, served on the jury in the second trial.

For this reason, I would hold the district court erred in denying the motion to strike the overlapping jury venires, see McClendon v. United States, 587 F.2d 384, 386-87 (8th Cir. 1978) (35 prospective jurors called to trial of another but involving similar charges and same witnesses were not called to defendant's trial; jury chosen from remaining 37 prospective jurors), cert. denied, 440 U.S. 983 (1979), and reverse and remand for further proceedings.

A true copy.

    Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.